CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

IVANA DJAK (NYBN 5516687)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3918
    FAX: (510) 637-3724
    ivana.djak@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>GOLDY RAYBON,<br><br>    Defendant. | **CASE NO. 23-CR-29 JSC**<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Court:        Hon. Jacqueline Scott Corley<br>Hearing Date:  November 5, 2025<br>Hearing Time:  10:00 a.m. |

## I. INTRODUCTION

The Defendant, Goldy Raybon, has plead guilty to being a felon in possession of a firearm in an incident that involved him throwing a loaded firearm under a vehicle while fleeing from law enforcement on January 10, 2023. He threw the loaded firearm on a busy street in San Francisco in the middle of the day. Law enforcement only encountered the Defendant on January 10, 2023, because a few days prior, on January 8, 2023, San Francisco Police Department ("SFPD") officers were dispatched to a 911 call about a man, later identified as the Defendant, brandishing an AK-47 in the area of Golden Gate Avenue and Leavenworth Street. *See* Dkt. No. 101, Presentence Report ("PSR") ¶¶ 7–19.

On June 25, 2025, the Defendant pled guilty to Count One of the Indictment (Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. § 922(g)(1)). *See* Dkt. No. 1, Indictment; Dkt.

Nos. 84, 85.  Sentencing is set for November 5, 2025.

The Defendant has a lengthy and violent criminal history.  He has incurred eight convictions as an adult, including for robbery, animal cruelty, and controlled substance offenses, and has been arrested over a dozen times between his convictions.  PSR ¶¶ 36–62.  Additionally, in the time since the Defendant was released on bond in July 2024, he has appeared before the magistrate court no less than 18 times.  He has engaged in continuous violations of his conditions of pretrial release, ranging from positive drug tests, curfew violations, being kicked out of an in-patient drug treatment program, to being named in a domestic violence police report.  *Id.* ¶¶ 4–5.

The Defendant's conduct and criminal history are serious and warrant a substantial term of incarceration.  Based on the nature and circumstances of the offense, the Defendant's criminal history, the Defendant's continuous violation of his conditions of pretrial release, and the Defendant's acceptance of responsibility, the government submits that a custodial sentence of 27 months' imprisonment to be followed by three years of supervised release, is sufficient, but not greater than necessary, to achieve the goals set forth in 18 U.S.C. § 3553(a).

**II.     BACKGROUND**

    **A.     Offense Conduct**

On January 8, 2023, SFPD officers were dispatched to a 911 call about a man brandishing an AK-47 and driving in a white Nissan Murano in the area of Golden Gate Avenue and Leavenworth Street.  PSR ¶ 7.  Officers responded to the scene and observed a man later identified as Goldy Raybon in a Nissan Murano with a license plate matching a partial plate description reported by the 911 caller.  Officers conducted a traffic stop and a probable cause search of the Defendant and the Nissan but did not locate any firearms.  PSR ¶¶ 8 – 10.

Officers later reviewed surveillance footage from the January 8, 2023 incident captured by a camera from the Tenderloin Community Center.  Officers observed the Defendant park his Nissan and enter his apartment building at 146 McAllister Street at 2:50pm with a black bag that was large enough to conceal an assault weapon.  The Defendant then left the building without the black bag at 2:53pm. *Id.* ¶¶ 11 – 13.  It was shortly after the defendant's stop at his apartment building that SFPD officers

conducted the traffic stop. After reviewing the surveillance video, officers obtained a search warrant from the San Francisco Superior Court to conduct a search of the defendant's apartment at 146 McAllister Street #71, the defendant's person, and his Nissan. PSR ¶ 14.

On January 10, 2023, as SFPD officers and ATF Special Agents conducted surveillance around the Defendant's apartment building, they observed him and a woman leave the building. The officers attempted to detain the defendant, but he fled towards his vehicle. As he ran, he discarded a black and pink handgun under a parked car on Leavenworth Street near the corner with McAllister Street. *Id.* ¶ 15 The officers arrested the Defendant. The Defendant's companion, who had left the apartment building shortly before the defendant, was detained while she was attempting to retrieve the Defendant's handgun from under the car. *Id.* ¶ 16. The handgun that was retrieved is a pink and black FMK Firearms 9C1 G2 9mm pistol. The handgun contained nine rounds of IMI 20, 9mm ammunition. *Id.* ¶ 17.

At the Tenderloin Police Station, SFPD officers read the Defendant his Miranda rights and interviewed him. The Defendant stated that the assault weapon he had on January 8 was not real. The Defendant admitted that he had the handgun he threw under the car on January 10 for his protection. *Id.* ¶ 18.

**B.     Defendant's Criminal History**

The Defendant has a long and violent criminal history. Most recently in March 2023, the Defendant was convicted of animal cruelty in Sacramento County and sentenced to a 32-month term of imprisonment. PSR ¶ 44. The animal cruelty conviction arose out of an incident during which the Defendant brutalized a small pit bull by swinging the dog into the air by its leash and repeatedly slamming it into the pavement, and then stomping the dog's head. *Id*. The March 2023 conviction followed a November 2022 arrest for similar conduct, during which the Defendant was seen swinging a puppy by its leash, slamming it into the pavement repeatedly, and stomping its head. *Id.* ¶ 45.

The Defendant has been engaged in criminal conduct for over 25 years. In 2000 he was convicted in San Francisco County of a misdemeanor drug possession charge and sentenced to 60 days in jail and three years of probation. PSR ¶ 36.

In May 2006, the Defendant was convicted of second degree robbery and receipt of stolen goods, and was sentenced to one year in jail. During the 2002 robbery, the Defendant repeatedly punched and hit the victim in the head. *Id.* ¶ 37.

In October 2005, the Defendant was convicted of second degree robbery in San Francisco County and was sentenced to five years in prison. During this May 2005 robbery, the Defendant held and pointed a gun at the victim's head. Officers found a handgun in the Defendant's vehicle when they arrested him. *Id.* ¶ 40.

In October 2009 (while serving his sentence for the August 2005 robbery), the Defendant was convicted of possessing a controlled substance while in prison and was sentenced to another four years in prison. *Id.* ¶ 42.

While in custody in June 2015, the Defendant was cited with assaulting an inmate. *Id.* ¶ 61. During the periods between his convictions and terms of incarcerations, the Defendant continuously encountered law enforcement. He has been arrested dozens of times for, among other things, being a felon in possession of a firearm, evading law enforcement, resisting arrest, engaging in hit and runs, thefts, and controlled substance offenses. Many of the Defendant's arrests occurred while he was on probation. *Id.* ¶¶ 49–62.

### C.    Continuous Pretrial Release Violations

Although the Defendant has plead guilty, the Court, the magistrate court, Pretrial Services, and the government have expended significant resources litigating the Defendant's continuous pretrial release violations. PSR ¶¶ 4–5. The Defendant has appeared before the magistrate court related to various violations no less than 18 times in this case, including for positive drug tests, location monitoring violations, curfew violations, being kicked out of residential drug treatment programs, and

4

23-CR-29 JSC

being named in a domestic violence police report.  See Dkt. Nos. 41, 42, 44, 46, 47, 48, 51, 58, 59, 61, 65, 68, 69, 71, 76, 79, 80, 83, 84, 87, 88, 91, 92.

### III. PROCEDURAL HISTORY

On February 1, 2023, the Defendant was charged in a one-count Indictment with being a felon in possession of a firearm in violation of 18 U.S.C. §922(g)(1).  Dkt. No. 1.  At that time, the Defendant was serving a 32-month sentence for a conviction on animal cruelty in Sacramento County.  Thereafter, on July 3, 2024, the Defendant was released from state custody and a detention hearing was held before the Honorable Thomas S. Hixson.  Dkt. No. 34.  Judge Hixson ordered the Defendant released on July 3, 2025.  Dkt. Nos. 33, 34, 35.  The Defendant plead guilty without a plea agreement to Count One of the Indictment on June 25, 2025.  Dkt. Nos. 84, 85. Sentencing is set for November 5, 2025 at 10:00 a.m.

### IV. SENTENCING GUIDELINES CALCULATION

The government agrees with Probation's calculations of the sentencing guidelines and a total offense level of 11.  The calculation is as follows:  Felon in Possession of Firearm and Ammunition (Base Offense Level 14, pursuant to U.S.S.G. § 2K2.1(a)(4)).  There is a three-level reduction for Acceptance of Responsibility, pursuant to U.S.S.G § 3E1.1.  *See* PSR ¶¶ 24 – 33.

The Defendant has a long and serious criminal history, and his criminal history score is 13, which results in a criminal history category of VI.  PSR ¶ 45.

Based on a total offense level of 11 and a CHC of VI, the guideline range is 27 to 33 months.

Probation recommends a below guideline term of 22 months of incarceration.  PSR Recommendation.

The government recommends a low end of the guideline term of 27-months of custody and three years of supervised release.

### V. APPLICABLE LAW

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2).  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).  The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines.  *Id.*  After determining the

5
23-CR-29 JSC

appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Id.* at 991–93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need for the sentence to protect the public from future crimes of the defendant;

(5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(6) the need to provide restitution to any victims of the offense.

**VI.    RECOMMENDED SENTENCE AND SECTION 3553(a) FACTORS**

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends a custodial sentence of 27 months to be followed by a three-year term of supervised release, commensurate with an Adjusted Offense Level of 11 and a CHC VI. A variance is not appropriate in this case.

The nature and circumstances of the Defendant's offense are serious. One January 10, 2023, the Defendant threw a loaded firearm under a vehicle in the middle of the day on a crowded San Francisco street while fleeing from law enforcement. Firearms discharge and someone could have been gravely hurt. This conduct only came to light because on January 8, 2023, the Defendant engaged in such menacing erratic dangerous behavior that bystanders called 911—he was seen waving around what appeared to be an assault rifle, again, in the middle of the day on a busy San Francisco street. In both of those instances, the Defendant knew he had been convicted of several felony offenses and served lengthy prison terms—the Defendant knew he was not supposed to have a firearm, and had one anyway.

The Defendant also has a lengthy criminal history including for violent robberies during which

he assaulted his victims.  The Defendant has not only physically assaulted humans but also brutalized animals.  Between his convictions, the Defendant has been arrested a dozen times.  He has engaged in this conducted while on probation and under court supervision.

While it is true that the Defendant has taken responsibility for the offense conduct, and the government accordingly does not seek a high end of the guideline range sentence, the Defendant has also shown a complete disregard for court orders.  He has been unabated in violating the conditions of his pretrial release and he has made a mockery of the rule of law.  The government, Pretrial Services, and the courts have expended a great amount of time and resources because of the Defendant's flagrant violations.  A downward variance is not appropriate in this case.

A significant term of incarceration is warranted.  The proposed 27-month term of incarceration will not be the Defendant's longest term of incarceration to date, but it is significant enough paired with a three year term of supervised release to hopefully deter future criminal conduct.  The government is hopeful that the Defendant's acceptable of responsibility and his recent engagement with drug and mental health treatment signal that he will rejoin society in a more productive manner after this term of incarceration and rebuild a life for himself and his family.

The governments' recommendation of a custodial sentence of 27 months imprisonment takes all the above aggravating and mitigating factors into account.  A lengthy sentence is necessary to protect the public from an individual who has engaged in serious and dangerous criminal conduct and who has made a lifestyle of breaking the law.  The recommended sentence also reflects that the Defendant has taken responsibility for his actions and has recently indicated his interest in drug and mental health treatment.

A 27-month sentence followed by three years of supervised release is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553.

DATED: October 29, 2025                    Respectfully submitted,

CRAIG H. MISSAKIAN
Acting United States Attorney

/S/
_____

Ivana Djak
Assistant United States Attorney